UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 04-60899-CIV-MARRA

MARTY STEINBERG,
as court-appointed Receiver for
LANCER MANAGEMENT GROUP LLC,
LANCER MANAGEMENT GROUP II LLC,
LANCER OFFSHORE INC.,
OMNIFUND LTD., LSPV INC., LSPV LLC,
ALPHA OMEGA GROUP INC., and
G.H. ASSOCIATES LLC

      Plaintiff,

vs.

ALPHA FIFTH GROUP; et al.

      Defendants.
_____ /

## ORDER AND OPINION ON MOTION TO DISMISS FIFTH AMENDED COMPLAINT

THIS CAUSE is before the Court upon Motion of Defendants Andrew L. Evans and

Dominion Income Management Corporation to Dismiss the Fifth Amended Complaint

[DE 439]; Defendant Dean M. Willard's Motion to Dismiss the Fifth Amended Complaint

[DE 437]; and Requests for Oral Argument [DE 441, 498].  The motions are fully

briefed and ripe for review.  The Court has carefully considered the motions,

responses, replies and is otherwise fully advised in the premises.

## Background

The Receiver alleges that in early May, 2000, Dean M. Willard ("Willard"), as

agent for Dominion Income Management Corp. ("Dominion"), and its controlling

shareholder, Andrew L. Evans ("Evans") (collectively, "Defendants"), contacted Michael Lauer ("Lauer") to raise the possibility of Lancer Management Group LLC ("LMG") investing on behalf of Lancer Offshore Inc. ("Offshore"), Orbiter Fund, Ltd. ("Orbiter") and The Viator Fund ("Viator") in a public company called Envision Development Corporation ("Envision").   Fifth Amended Complaint ("Compl.") ¶ 79 [DE 392].  Willard suggested to Lauer that LMG invest in Envision by purchasing a large block of shares of Envision common stock that was owned and held by Dominion at a cost substantially below the market price.  Willard further represented that the sale proceeds would be used to fund Envision's growth and operations.  Compl. ¶ 80.

As of May 1, 2000, the shares of Envision's common stock were being publicly traded on the American Stock Exchange ("AMEX") at approximately $71.75 per share. Compl. ¶ 81.  Thereafter, on May 30, 2000, Offshore, Orbiter and Viator purchased 1,000,000 shares of Envision from Dominion at $11.00 per share (the "May 2000 Transaction").  Compl. ¶ 82.  On this same date, the closing price for Envision common stock on the AMEX was $50.25 per share.  Compl. ¶ 83.  By August 30, 2000, the market price of Envision's common stock had declined to $10.75 per share. Compl. ¶ 84.  As a result of the market decline, Lauer accused Dominion, Evans and Willard of fraud in connection with the purchase and sale of the Envision common stock.  In order to resolve the dispute, Dominion entered into a Settlement and Release Agreement with Offshore, Orbiter and Viator (the "Settlement and Release Agreement") on September 25, 2000.  Compl. ¶ 85.

Pursuant to the Settlement and Release Agreement, Dominion transferred to Offshore, Orbiter and Viator warrants that it had received from Envision to purchase an aggregate of 750,000 additional shares of Envision common stock at a price of $0.01 per share.  In return, Offshore, Orbiter, and Viator agreed to release, on behalf of, *inter alia*, their interest holders, parents, subsidiaries, joint ventures, successors, affiliates, advisors, beneficiaries, and anyone claiming, by, under and/or through any of them, Dominion, Evans and Willard from all claims past or present, known or unknown, suspected or unsuspected existing as of the date of the Agreement.  Compl. ¶ 86, Settlement and Release Agreement, § 5.1, DE 440, Ex. C.

About eight months later, in June 2001, Offshore, Orbiter and Viator brought suit against Dominion, Evans and Willard in the United States District Court for the Southern District of New York, seeking to, among other things, rescind the Settlement and Release Agreement on the grounds that it had been fraudulently induced.  In a decision dated March 20, 2002, Judge Lawrence McKenna dismissed all of plaintiffs' claims in that action because they were barred by the Settlement and Release Agreement.  *See Lancer Offshore, Inc. v. Dominion Income Mgmt. Corp.*, No. 01 Civ. 4860 (LMM), 2002 WL 441309 (S.D.N.Y. March 20, 2002) ("*Lancer I*").  Subsequently, a final judgment was entered in that matter because defendants' motions to dismiss were granted and all claims were dismissed at to all plaintiffs.  DE 437, Ex. B.[1]

---

[1]  These facts are outside of the pleadings.  Because questions relating to the affirmative defenses of *res judicata* and collateral estoppel require consideration of

On July 9, 2004, the Receiver filed the original complaint in this case against

Envision seeking to recover the $11 million paid by the "Receivership Entities" for the

Envision common stock.  DE 1, ¶ 28.  On March 2, 2006, the Receiver filed a fourth

amended complaint which substituted Dominion, Evans and Willard as defendants for

Envision.  DE 149.  On March 12, 2007, the Receiver filed the Fifth Amended

Complaint asserting the following claims:

I.      Actual fraudulent transfer under Florida Statutes § 726.105(1)(a), Florida
        Statutes § 726.108, and other applicable law;

II.     Constructive fraudulent transfer under Florida Statutes § 726.105(1)(b),
        Florida Statutes § 726.108, and other applicable law;

III.    Constructive fraudulent transfer under Florida Statutes § 726.106(1),
        Florida Statutes § 726.108, and other applicable law; and

IV.     Unjust enrichment.

DE 392.  Evans moves to dismiss the Fifth Amended Complaint on the following

grounds: (i) the Court lacks personal jurisdiction over Evans; (ii) the Receiver does

not allege that Evans was a transferee or received a benefit in the May 2000

---

matters beyond the four corners of the Complaint in this case, the Court cannot
resolve this disputed issue on a motion to dismiss.  *Taylor, Bean & Whitaker Mortg.
Corp. v. GMAC Mortg. Corp.*, 05-cv-260, 2007 WL 1114045 at *6 (M.D. Fla. Apr. 12,
2007).  Indeed, *res judicata* should only be raised in the context of a Rule 12(b)(6)
motion when the preclusive effect of the prior action can be determined from the
face of the complaint.  *See Concordia v. Bendekovic*, 693 F.2d 1073 (11th Cir. 1982).
Even assuming the Court could consider the motions relating to the asserted
defenses, because the Receiver has not stated valid causes of action, the Court is
unable to conduct a proper analysis to determine, as a matter of law, whether his
claims would be barred by *res judicata* or collateral estoppel.

Transaction; (iii) the Receiver's claims are barred by the Settlement and Release

Agreement where the Receivership Entity Offshore released all claims against Evans

and Dominion relating to the May 2000 Transaction; (iv) the Receiver cannot

challenge the findings of the court in *Lancer I* due to the doctrines of collateral

estoppel and *res judicata*; and (v) the Receiver's claims are barred by the statute of

limitations.  As support for the Motion to Dismiss, Evans submitted, among other

things, a copy of the Settlement and Release Agreement.  The Court may consider the

Settlement and Release Agreement without requiring conversion of the motion to

dismiss into a motion for summary judgment as the Receiver refers to it in the

Complaint and it is central to the Receiver's claims.  *Brooks v. Blue Cross and Blue*

*Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

**Standard of Review**

    In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure

12(b)(6), a court must accept all factual allegations in a complaint as true and take

them in the light most favorable to the plaintiff.  *See Erickson v. Pardus*, 127 S.Ct.

2197, 2200 (2007).  To satisfy the pleading requirements of Federal Rule of Civil

Procedure 8, a complaint must contain a short and plain statement showing an

entitlement to relief, and the statement must "give the defendant fair notice of what

the plaintiff's claim is and the grounds upon which it rests."  *Swierkiewicz v. Sorema*

*N.A.*, 534 U.S. 506, 512 (2002) (citing Fed. R. Civ. P. 8); *see also Bell Atlantic Corp. v.*

*Twombly*, 127 S.Ct. 1955, 1964 (2007); *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346

(2005).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [ ] a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. at 1964-65 (citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true."  *Id*. at 1965.  Plaintiff must plead enough facts to state a plausible basis for the claim.  *Id*.

## Discussion

### Florida's Uniform Fraudulent Transfer Act

Fraudulent transfer claims under Florida law arise under the Florida Uniform Fraudulent Transfers Act ("FUFTA"), Fla. Stat. § 726.101, *et seq*..  FUFTA was promulgated to prevent an insolvent debtor from transferring assets out of the reach of its creditors when the debtor's intent is to hinder, delay, or defraud any of its creditors.  *Id*.  Thus, the statute provides that any transfer made or obligation incurred by a debtor is fraudulent as to a creditor if the debtor made the transfer or incurred the obligation to hinder or defraud the creditor or without receiving "reasonably equivalent value in exchange for the transfer or obligation."  Fla. Stat. § 726.105-106.

FUFTA, as set forth in Florida Statute § 726.105, provides the substantive requirements that must be pled to state a valid fraudulent transfer claim.

*Nationsbank, N.A. v. Coastal Utilities, Inc.*, 814 So.2d 1227, 1229 (Fla. Dist Ct. App. 2002).  The plaintiff must show that "(1) there was a creditor to be defrauded; (2) a debtor intending fraud; and (3) a conveyance of property which could have been applicable to the payment of the debt due."  *Id*.

FUFTA specifically permits creditors to pursue claims against debtor-transferors.  In *Friedman v. Heart Institute of Port St. Lucie*, the Florida Supreme Court defined a creditor as one who possesses a "claim" under FUFTA and, thus, may seek a variety of remedies to prevent the fraudulent transfer of assets.  863 So.2d 189, 191-92 (Fla. 2003).  A "claim" means a right to payment, whether or not it is reduced to judgment.  *Id*.  The *Friedman* Court, based on the plain language of the statute, stated that a plaintiff suing under FUFTA must show he has a "claim" which qualifies him as a "creditor" of the entity or individual who is transferring or attempting to transfer funds to thwart the creditors' attachment.  *Id*.; Fla. Sta. § 726.105(1).

After carefully reviewing the Receiver's allegations along with Exhibit B, the Complaint appears to allege that Dominion, Evans and/or Willard (the "transferors") fraudulently transferred $11 million to Offshore, Omnifund[2] and Viator (the

---

[2]  There is no specific mention of Omnifund in the Complaint, other than reference to it being one of the "Funds."  Yet it is listed on Exhibit "B" to the Complaint as a transferee.  The Court is uncertain as to whether the Exhibit is inaccurate or whether this is an typographical error.  The lack of an explanation of Omnifund's involvement only adds to the confusion in this case and contributes to the Receiver's failure to state a valid cause of action.

"transferees") on May 30, 2000.  *See* DE 392, Ex. B at 1.  So, according to the instant Complaint, some Receivership Entity or Entities are suing for the fraudulent transfer of funds that were transferred from Dominion, Evans and Willard to a Receivership Entity or Entities.  This allegation makes no sense.  In addition, the lack of specific factual allegations establishing the debtor creditor relationship requires the Court to make assumptions in an effort to determine many of the issues raised by the briefs, in addition to addressing the question of whether the Receiver has properly alleged that he is a legitimate creditor with standing.

The background allegations seem to suggest that securities fraud was committed when Offshore, Orbiter and Viator paid $11 million to Dominion for one million shares of Envision common stock.  That could, under certain circumstances, make Dominion a debtor to Offshore, Orbiter and Viator.  Common sense would suggest that any fraudulent transfer would be a transfer from Dominion (the assumed debtor) to another.  This is not what is alleged.

The confusion is exacerbated by the fact that the Receiver has neither identified on which specific entity's behalf he is suing as a creditor, nor has he clearly articulated the basis upon which the transferor would be a debtor.  Because the Complaint contains no specific factual allegations establishing the debtor creditor relationship between any Receivership Entity and Defendants, it fails to state a cause of action for fraudulent transfer or unjust enrichment.

**The Settlement and Release Agreement**

On September 25, 2000, Dominion, through Evans, on the one hand, and Offshore, Orbiter and Viator on the other hand, entered into a Settlement and Release Agreement which specifically released any claims relating to the May 2000 Transaction.  DE 440, Ex. C.  At the very outset, the Settlement and Release Agreement explicitly references the May 2000 Transaction and specifically releases "any and all Claims with respect to and/or arising out of [Offshore's, Orbiter's and Viator's] purchase of the [Envision] Stock."  Settlement and Release Agreement at § 5.1 at 5.  Evans argues that the Receiver's claims were released by this Settlement and Release Agreement and that the Receiver's claims against him and Dominion are barred as a matter of law.  In response, the Receiver argues that he "brings this Proceeding on behalf of *the creditors* of the Offshore Funds, including LMG and other Receivership Entities.  These entities were not parties to the Settlement and Release Agreement, and do not sue the Defendants through the Offshore Funds but by *their own right*.  Thus, the Settlement and Release Agreement does not bar these creditors, or their court-appointed Receiver, from bringing claims against the Defendants."  DE 461 at 13 (emphasis supplied).  The Receiver also argues that because he seeks to avoid the Settlement and Release Agreement as a fraudulent transfer itself, the Settlement and Release Agreement cannot justify dismissal of the Complaint.

**Claims the Receiver States He is Pursuing**

The only statement made regarding on whose behalf the Receiver is acting is contained in paragraph six of the Complaint where it is alleged that the Receivership Order empowers the Receiver to bring this action on behalf of the Receivership Entities.  Compl. ¶ 6.  This is logical since

> [i]It is axiomatic [the Receiver] obtain[s] the rights of action and remedies that were possessed by the person or corporation in receivership.  *See Hamilton v. Flowers*, 134 Fla. 328 (Fla. 1938); *State of Fla., Dep't of Ins. v. Blackburn*, 633 So.2d 521 (Fla. Dist. Ct. App. 1994); *O'Neal v. Gen. Motors Corp.,* 841 F.Supp. 391 (M.D.Fla.1993); 44 Fla. Jur.2d Receivers § 95 (1996); 65 Am.Jur.2d Receivers § 100 (2001).  Although a receivership is typically created to protect the rights of creditors, the receiver is not the class representative for creditors and receives no general assignment of rights from the creditors.  Thus, the receiver can bring actions previously owned by the party in receivership for the benefit of the creditors, but he or she cannot pursue claims owned directly by the creditors.  *See McHale v. Huff*, 109 B.R. 506 (Bankr. S.D. Fla.1989).

*Freeman v. Dean Witter Reynolds, Inc.*, 865 So.2d 543, 550 (Fla. Dist. Ct. App. 2003).

After carefully reviewing the allegations, it appears from the Complaint that the Receiver is bringing this action on behalf of Offshore.[3]  The Receiver, however, asserts that he is not bringing this action on behalf of Offshore, but instead on behalf of the creditors of Offshore.  This he is not permitted to do.[4]  The Florida Supreme

_____

[3]  Orbiter and Viator are not alleged to be Receivership Entities.

[4]  Indeed, he recognizes this fact in another ancillary proceeding, where in response to the motion to dismiss, he argues the Receivership Entity itself qualifies as a creditor.  *See Receiver v. Redwood Companies, et al.*, 06-61919-Civ-Marra.  As will

Court has ruled that a receiver may not pursue claims that are owned directly by creditors of the receivership entities, but he may bring in an ancillary action claims previously owned by the entities in receivership. *Id.* Accordingly, the Receiver cannot invoke his purported representation of creditors' interests to escape the potentially binding effect of Offshore's prior Settlement and Release Agreement. *See Javitch v. First Union Securities, Inc.*, 315 F.3d 619, 625-627 (6th Cir. 2003) (rejecting receiver's contention that he was not bound by receivership entities' prior arbitration agreements because he was suing on behalf of creditors); *Arkanase v. Fatjo*, No. Civ. A H-91-3140, 1996 WL 33373364, at *22 (S.D. Tex. 1996) (effective "general release . . . is also binding upon the Trustee who stands in the shoe of the bankrupt corporation . . .").

The Receiver also argues that insofar as the Complaint seeks to avoid the Settlement and Release Agreement as a fraudulent transfer, the Settlement and Release Agreement cannot justify dismissal of the Complaint. The first mention of such a claim is in the Receiver's response to the present motion. It does not appear anywhere in the Complaint. While it may be possible to assert such a claim, it has not been alleged. *In re NuMed Home Health Care, Inc.*, 326 B.R. 859 (Bkrtcy. M.D. Fla. 2005) (court granted plaintiff's request to amend its complaint to add a cause of action to avoid a release as a fraudulent transfer under § 544(b) of the Bankruptcy

be discussed *infra*, the complaint in that action suffers from many of the same infirmities as found in the instant case.

Code and §§ 726.105 and 726.106 of the Florida Statutes); *In re e2 Communications,*

*Inc.,* 320 B.R. 849 (Bkrtcy. N.D. Tex. 2004) (in light of the Bankruptcy Code's

expansive definition of "transfer" and the express intent of Congress that this

definition be read as broadly as possible, plus Texas' Uniform Fraudulent Transfer Act

specifically defining "transfer" to include a release, a release could be considered

itself a transfer of property of an estate that is subject to being avoided).

The Complaint alleges that "Lauer caused the Offshore Funds to make transfers

to or for the benefit of the Defendants as detailed on the attached Exhibit B."

Exhibit B includes 18 pages of alleged fraudulent transfers, all in dollar amounts, with

no mention of a Settlement and Release Agreement.  Because the Complaint does not

seek to avoid the Settlement and Release Agreement as a fraudulent transfer itself,

the argument that the Settlement and Release Agreement cannot justify dismissal of

the Complaint is meritless.  If this is a theory the Receiver plans to pursue, he needs

to allege it.[5]

## Statute of Limitations

In their motion, Defendants assert that the claims against them are barred by

the applicable statute of limitations.  The Receiver responds that this argument is

flawed because the relevant look-back period starts to run at the time of the original

---

[5] Since Defendants have not challenged the validity of seeking to avoid the Settlement and Release Agreement as a fraudulent transfer itself in their respective briefs, the Court is not deciding at this time whether such a cause of action can be brought.

Complaint.  Even if the statute of limitations has run, the Receiver argues it should
be equitable tolled.  Alternatively, the Receiver raises the possibility that the law of
New York, which provides for a six-year statute of limitation, may be applicable to
this action, rendering the Receiver's causes of action against Defendants timely even
without application of equitable tolling.

A statute of limitations bar is "an affirmative defense, and ... plaintiff[s][are]
not required to negate an affirmative defense in [their] complaint."  *La Grasta v.
First Union Securities, Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citing *Tregenza v.
Great American Communications Co.*, 12 F.3d 717, 718 (7th Cir. 1993)).  A Rule
12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is
"apparent from the face of the complaint" that the claim is time-barred.  *Id.* (citing
*Omar v. Lindsey*, 334 F.3d 1246, 1251 (11th Cir. 2003)); *Tello v. Dean Witter
Reynolds, Inc.,* 410 F.3d 1275, 1288 n.12 (11th Cir. 2005).

A cause of action for an actual fraudulent transfer under Fla. Stat. §
726.105(1)(a), as in Count I, is extinguished unless the action is brought within four
years after the transfer was made or, if later, within one year after the transfer was
or could reasonably have been discovered by the claimant.  Fla. Stat. § 726.110(1).  A
cause of action for constructive fraudulent transfer under either Fla. Stat. §§
726.105(1)(b) or 726.106(1), as in Counts II and III, is extinguished unless the action is
brought within four years of the alleged transfer, regardless of when the transfer is
ultimately discovered.  Fla. Stat. § 726.110(2).  The statute of limitations for unjust

enrichment is four years.  Fla. Stat. § 95.11(3)(k).  Florida courts have refused to

apply the delayed discovery doctrine to unjust enrichment claims.  *See Davis v.*

*Monahan*, 832 So.2d 708, 712 (Fla. 2002).  The transfers that form the basis of

Defendants' alleged liability were made on May 30, 2000.

Beginning with Counts II, III and IV, these claims are extinguished by operation

of Florida law unless brought within four years from the date of last alleged

fraudulent transfer, or in this case, by May 30, 2004.  Fla. Stat. § 726.110(2); Fla.

Stat. § 95.11(3)(k).  The original Complaint was filed on July 9, 2004.  This is

indisputably after the expiration of the statute of limitations as to Counts II

(constructive fraudulent conveyance - 4 years statute of limitations), Count III

(same), and Count IV (unjust enrichment - 4 year statute of limitations).

Turning now to Count I, the statute of limitations may be extended if it is

shown that the claim is made within one year after the transfer was or could

reasonably have been discovered by the claimant.  Based on the face of the original

Complaint, it is apparent that the Receiver had notice of the $11 million transfer

from Offshore, Orbiter and Viator to Dominion no later than the date of the filing of

the original Complaint, or July 9, 2004.  Pursuant to Fla. Stat. § 726.110(1), the

Receiver had one year from July 9, 2004 (the latest date it could be said the Receiver

discovered the transfers) or July 9, 2005, to file his claim under Florida Statutes §

726.105(1)(a) (Count I) against Defendants.

The Receiver's original Complaint did not name Dominion, Evans or Willard.
Instead, the Receiver sued Envision in his effort to avoid the $11 million transfer
allegedly paid by the Receivership Entities for the Envision common stock.  On March
2, 2006, Dominion, Evans and Willard were substituted as defendants for Envision.
*See* Fourth Amended Complaint, DE 149.  On March 12, 2007, the Receiver filed a
Fifth Amended Complaint, which for purposes of this discussion, is identical to the
Fourth Amended Complaint.

The Receiver asserts that he should be allowed to have the filing date for these
defendants relate back to the filing of the original Complaint pursuant to
Fed.R.Civ.P. 15(c)(2).  Federal Rule of Civil Procedure 15 permits the relation back of
an amendment of a pleading to the date of the original pleading when the "claim or
defense asserted in the amended pleading arose out of the conduct, transaction or
occurrence set forth or attempted to be set forth in the original pleading . . ."
Fed.R.Civ.P. 15(c)(2).  Because he asserts the same causes of action and seeks to
recover the same transfers from Defendants as he did against Envision in the original
Complaint, the Receiver argues that the Fourth and the Fifth Amended Complaints
relate back to the original Complaint, which arguably, was filed within the statute of
limitations period.

While the claims the Receiver asserts against Defendants in the Fourth and
Fifth Amended Complaint arose out of the same conduct as the claims alleged against
Envision in the original Complaint, that fact is only part of what the Court must

consider in deciding whether the Receiver may take advantage of the relation-back

doctrine.   "[W]hen an amendment seeks to change a party against whom a claim is

asserted, as opposed to changing merely the allegations set forth in the pleading, the

relation back rule is more stringent," requiring compliance with Fed.R.Civ.P.

15(c)(3).  *Cliff v. Payco General American Credits, Inc.*, 363 F.3d 1113, 1131 (11th Cir.

2004).  *See also Nobles v. Rural Community Ins. Servs.*, 303 F. Supp. 2d 1279, 1286

(M.D. Ala. 2004) ("Rule 15(c)(2) is not applicable when the amendment seeks to

change the party...").  Such an amendment relates back if, in addition to the claims

arising out of the same conduct, the Receiver shows that Defendants received notice

of the action, and knew, or should have known, but for a mistake concerning the

identity of the proper party, the action would have been brought against them.

Fed.R.Civ.P. 15(c)(3);  *Cliff*, 363 F.3d at 1131; *Powers v. Graff*, 148 F.3d 1223, 1228

(11th Cir. 1998).  "As a result, when an amendment seeks to change a party against

whom a claim is asserted . . . Rule 15(c)(3) requires more than a showing that the

claim arose out of the same conduct or transaction originally pleaded; when an

amendment seeks to change or add a defendant, Rule 15(c)(3) introduces

considerations of both prejudice and notice."  *Cliff*, 363 F.3d at 1131.  Because of the

potential for the application of the relation-back doctrine, which raises factual

questions of whether Defendants knew or should have know of the present action and

whether the Receiver was mistaken concerning the identity of the proper parties to

be joined in this suit, the Court cannot decide, as a matter of law, whether the

statute of limitations has run as to Count I of the Complaint.

**Equitable Tolling**

"'Equitable tolling' is a doctrine under which plaintiffs may sue after the statutory time period has expired if they have been prevented from doing so due to inequitable circumstances." *Ellis v. General Motors Acceptance Corp.*, 160 F.3d 703, 706 (11th Cir. 1998).[6]  Equitable tolling should be "applied sparingly" by the courts. *Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000).  Equitable tolling is available and appropriate where the plaintiff untimely files his complaint because of "extraordinary circumstances that are both beyond his control and unavoidable even with diligence." *Sandvik v. U.S.*, 177 F.3d 1269, 1271 (11th Cir. 1999).  The burden rests with a plaintiff to show that equitable tolling is warranted.  *Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 661 (11th Cir. 1993).

The Eleventh Circuit has held that equitable tolling is appropriate where the defendant misleads the plaintiff into allowing the statute of limitations to lapse, where the plaintiff has no reasonable way of discovering the wrong perpetrated

---

[6]  Florida Statutes § 95.051(1) enumerates eight circumstances under which the running of the time under any statute of limitations is tolled.  Absent from this list of eight circumstances is a Receiver's failure to properly identify the recipient of a transfer.  Furthermore, § 95.051(2) expressly precludes the use of any tolling provision not listed:  "No disability or other reason shall toll the running of any statute of limitations except those specified in this section, § 95.091, the Florida Probate Code, or the Florida Guardianship Law."  Thus, the legislature has made clear its intent to exclude all tolling exceptions not listed in the statute.  *HCA Health Servs. of Florida, Inc. v. Hillman*, 906 So.2d 1094, 1098-1100 (Fla. Dist. Ct. App. 2004).

against him during the statutory period, or where the plaintiff timely files a

technically defective pleading but acts with proper diligence in prosecuting his claim.

*Justice v. U.S.*, 6 F.3d 1474, 1479 (11th Cir. 1993); *see also Irwin v. Veterans*

*Administration*, 498 U.S. 89, 96 (1990).  Due diligence by plaintiff is insufficient

alone, and equitable tolling does not apply to "garden variety" claims of excusable

neglect.  *Justice*, 6 F.3d at 1479-80; *Irwin*, 498 U.S. at 96; *see also Covey v. Arkansas*

*River Co.*, 865 F.2d 660, 662 (5th Cir. 1989) ("It is a common maxim that equity is not

intended for those who sleep on their rights").

The Receiver argues equitable tolling is applicable to this case by analogizing

himself to a bankruptcy trustee, where statutes of limitations have been tolled in

order to further the goal of recovering funds for distribution to creditors.  The cases

cited by the Receiver stand for the proposition that in special circumstances of

excusable ignorance, or if the defendant's wrongful conduct prevents a timely filing,

the statute of limitations on an avoidance claim may be equitably tolled.  *See In re*

*Olsen*, 36 F.3d 71 (9th Cir. 1994); *In re Stanwich Fin. Servs. Corp.*, 29 B.R. 25 (Bkrtcy.

D. Conn. 2003); *In re Int'l Admin. Servs., Inc.*, 408 F.3d 689, 700 (11th Cir. 2005).

These cases are inapplicable here where the Receiver has not shown that he

"remained in the dark without any fault or want of diligence or care on his part." *In*

*re Olsen*, 36 F.3d at 73.  Moreover, it is not alleged that Defendants did anything

wrongful regarding the Receiver's failure to name them in the original Complaint, or

that special circumstances were responsible for the Receiver's failure to initially

name them.  The Receiver has not met his burden of demonstrating that he either

"acted with due diligence to discover the negligently concealed fraud or that one of

the parties involved in the alleged fraud took positive steps to conceal the transfers."

*In re Int'l Admin. Servs.*, 408 F.3d at 702.  Whatever complications the Receiver

encountered upon his appointment, they presented no impediment to his ability to

bring the allegations against Envision for the May 30, 2000 transfers in the original

Complaint.  Through no influence of Defendants, the Receiver first sued Envision, and

then approximately 20 months later, amended the complaint to substitute Defendants

in lieu of Envision - almost six years after the purportedly fraudulent transfers.

Nothing about these circumstances would support an application of equitable tolling.

**Other Applicable Law**

The Receiver has not limited his recovery of the alleged fraudulent transfer to

causes of action solely under Florida law.  The Receiver has asserted causes of action

against Dominion, Evans and Willard and the other named defendants under Florida

and "other applicable law."  The Receiver's pleadings leave open the possibility that

the laws of states other than Florida may apply to the Receiver's recovery of the

transfers, and the Receiver has preserved his right to proceed under "other

applicable law."

This allegation serves to preserve the Receiver's claims against Defendants in

the event the substantive law of some other state governs the Receiver's claims.  The

Receiver raises the possibility that the law of New York, which provides for a six-year

statute of limitation, may be applicable to this action.  If New York law applies, the statute of limitations may not have run on the alleged fraudulent transfers.

The Court has insufficient information as to whether Florida or New York better satisfies the "significant relationship test" of the Restatement (Second) of Conflict of Laws.  If under a conflict of laws analysis, it is determined that Florida law applies, this case may not proceed against Defendants as to Counts II, III, and IV.  It could possibly proceed under Count I under Florida law if the Receiver can successfully relate the filing of the Fourth Amended Complaint against Defendants back to the filing of the original Complaint.  Additionally, if it is determined that New York law should apply and, if it is shown that the New York statute of limitations has not run as to the transfers in question, then the case may proceed.

**Personal Jurisdiction Over Andrew Evans**

Evans and Dominion argue that this Court lacks personal jurisdiction over Evans because he resides in Canada, does not own any property in the state where the Receiver attempted to serve him,[7] and does not meet the tests for jurisdiction under

---

[7]  The Receiver served the summons and Complaint upon Evans' wife in the state of Washington believing that Evans resided with his wife and was subject to service within the state of Washington.  It was not until Evans filed the Motion to Dismiss on June 1, 2007 that the Receiver became aware of Evans' claim that he did not reside with his wife.  In an abundance of caution, the Receiver's international process servers and private process servers have been attempting to effect service upon Evans in Canada, where Evans asserts he resides and is a citizen.  The Receiver has made at least 16 attempts to serve Evans in Canada yet has been unsuccessful, causing the Court to conclude on March 21, 2008, that Evans has made a concerted effort to evade service.  DE 584.

the long-arm statute in Washington or Florida.  In the Affidavits attached to his

Motion to Dismiss, Evans avers that he is not subject to this Court's jurisdiction due to

his alleged lack of contacts with the states of Washington and Florida.  The Affidavits

do not address Evans contacts or the lack thereof with the state of New York.

As this Court has held in related cases involving this Receiver, through the

interaction of 28 U.S.C. § 754 and 28 U.S.C. § 1969, the Court can acquire *in*

*personam* jurisdiction over a defendant that has sufficient minimum contacts with a

state where receivership property is situated and where the Receiver has filed in that

judicial district, within ten days of his appointment, copies of the order of

appointment.  *See e.g.*, Order and Opinion Granting Wise Global's Motion to Dismiss,

*Marty Steinberg v. A Analyst Limited, et al.*, 04-60898-Civ-Marra, DE 161; Order and

Opinion on Carens' Motion to Dismiss, *Court Appointed Receiver v. Michael Lauer, et*

*al.*,Case No. 05-60584-Civ-Marra, DE 282.  Therefore, if the requirements of §§ 754

and 1692 are satisfied, this Court may obtain personal jurisdiction over a party not

resident in this state so long as the non-resident can be served under the long-arm

statute of another state where receivership property can be found.  The Receivership

Entities possessed property in the Southern District of New York, as well as numerous

other districts wherein the Receiver filed the Receivership Order and the Order of

Reappointment.

The Receiver has shown that he reasonably believes that Evans had minimum

contacts with New York for jurisdictional purposes and it appears that Evans may be

subject to jurisdiction in the Southern District of New York for the purposes of the Complaint.  It also appears that Dominion is susceptible to jurisdiction in the Western District of Washington where it was located.

"It is now clear that federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits."  *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  "Where issues arise as to jurisdiction or venue, discovery is available to ascertain facts bearing on such issues."  *Id*. at n.13.  When a defendant challenges personal jurisdiction, courts generally permit depositions confined to the issues raised in the motion to dismiss.  8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2009 (2006); *Eaton v. Dorchester Development, Inc.*, 692 F.2d 727, 730 (11th Cir. 1982) ("[i]f the jurisdictional question is genuinely in dispute and the court cannot resolve the issue in the early stages of the litigation, . . .  [then] discovery will certainly be useful and may be essential to the revelation of facts necessary to decide the issue"); *see also Burns & Russell Co. of Baltimore v. Oldcastle, Inc.*, 166 F. Supp. 2d 432, 443 (D. Md. 2001).

According to the Eleventh Circuit Court of Appeals, "[t]he problem is the degree to which such discovery is mandatory or discretionary."  *Eaton*, 692 F.2d at 729 (reversing dismissal for lack of subject matter jurisdiction and remanding for discovery on jurisdictional facts where deposition had not taken place because a "[p]laintiff must be given an opportunity to develop facts sufficient to support a

determination on the issue of jurisdiction.")  According to *Eaton*, jurisdictional

discovery is not entirely discretionary.  *Id*. at 733.

While some circuits allow jurisdictional discovery more freely than others,

Eleventh Circuit precedent indicates that jurisdictional discovery is highly favored

before resolving Federal Rule of Civil Procedure 12(b)(2) motions to dismiss for want

of personal jurisdiction.  *See, e.g., Eaton.*, 692 F.2d at 731; *Majd-Pour v. Georgiana*

*Community Hosp., Inc.*, 724 F.2d 901, 903 (11th Cir. 1984) ("[a]lthough the plaintiff

bears the burden of proving the court's jurisdiction, the plaintiff should be given the

opportunity to discover facts that would support his allegations of jurisdiction");

*Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997) (a motion to

dismiss for lack of personal jurisdiction may require limited discovery so that a

meaningful ruling can be made); *Blanco v. Carigulf Lines,* 632 F.2d 656, 657 (5th Cir.

1980)[8] (dismissal was error where defendants had not responded to plaintiff's

interrogatories); *Skidmore v. Syntex Laboratories, Inc.*, 529 F.2d 1244, 1248-49 (5th

Cir. 1976) (held "that the district court acted too drastically in entering its order of

dismissal without giving plaintiff a further opportunity for discovery" even though

defendants had answered 184 interrogatories); *Littlejohn v. Shell Oil Co.*, 483 F.2d

1140, 1146 (5th Cir.) (*en banc*), *cert. denied*, 414 U.S. 1116 (1973) (denial of

---

[8]  In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

jurisdictional discovery reversed although the plaintiff had agreed in writing that discovery would not take place until after the district court had ruled on defendants' motion to dismiss); *Washington v. Norton Manufacturing Co.*, 588 F.2d 441, 443 (5th Cir.), *cert. denied*, 442 U.S. 942 (1979); *cf. Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214, n.7 (11th Cir. 1999).

Notably, this case presents an atypical situation.  Ordinarily, an attorney can turn to his client and obtain relevant information about the defendant's contacts with a particular forum.  Here, the Receiver has been placed in charge of entities, the controlling person of which is now an adversary.  The Receiver cannot readily determine facts that are within the exclusive control of Evans or Dominion.  Thus, he is handicapped in his present ability to develop facts independent of the use of the discovery process.

On the other hand, the Court recognizes that there may be times when it would be an abuse of discretion to allow such discovery if there are no legitimate grounds upon which jurisdiction could lie.  That is not the situation here.  Indeed, Evans and Dominion were subject to the jurisdiction of the New York Courts at the time of *Lancer I*, which arises out of the same transactions as this case, and the same jurisdictional basis that existed then may apply now.

Because the Receiver is faced with a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction and because the Receiver is operating at a disadvantage with no "client" from whom he can get information, the Court finds narrowly tailored and

limited jurisdictional discovery relative to Evans contacts with New York is appropriate to establish facts supporting the jurisdictional claims. *See Steinberg v. Barclay's Nominees (Branches) Ltd.*, Case No. 04-60897-Civ-Marra, 2007 WL 4287662 (S.D. Fla. Dec. 5, 2007).

## Leave to Amend

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely granted when justice so requires." Therefore, in accordance with the usual practice upon granting a motion to dismiss, leave to replead those counts that are dismissed herein without prejudice will be permitted.

## Conclusion

Accordingly, for the reasons set forth above, it is hereby

ORDERED AND ADJUDGED as follows:

1.    The Motion of Defendants Andrew L. Evans and Dominion Income Management Corporation to Dismiss the Fifth Amended Complaint [DE 439] is GRANTED IN PART AND DENIED IN PART. It is granted for the reasons explained herein, without prejudice, with leave to replead within twenty days in a manner consistent with this Opinion. It is denied, without prejudice, as to the issue regarding personal jurisdiction over Andrew Evans;

2.    Defendant Dean M. Willard's Motion to Dismiss the Fifth Amended Complaint [DE 437] is GRANTED for the reasons explained herein,

without prejudice, with leave to replead within twenty days in a manner consistent with this Opinion;

3.     The Requests for Oral Argument [DE 441, 498] are DENIED.

The Receiver may serve written jurisdictional discovery (interrogatories and requests for production of documents) on Defendants Evans and Dominion within two weeks of the entry date of this order.  The discovery must be narrowly tailored to personal jurisdiction issues implicated by the motions to dismiss.  The parties are directed to confer and cooperate in good faith in determining the logistics of the discovery.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 31st day of March, 2008.

KENNETH A. MARRA
United States District Judge

copies to:

All counsel of record