UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 04-60899-CIV-MARRA

MARTY STEINBERG
as court-appointed Receiver for
LANCER MANAGEMENT GROUP LLC,
et al.

    Plaintiffs
vs.

ALPHA FIFTH GROUP, et al.

    Defendants.
_____/

**ORDER AND OPINION DENYING**
**STENTON LEIGH CAPITAL CORP.'S MOTION TO DISMISS**

**THIS CAUSE** is before the Court upon Defendant Stenton Leigh Capital Corp.'s Motion to Dismiss Plaintiff's Sixth Amended Complaint [DE 660]. The Court has carefully considered the motion, response and reply, and is otherwise fully advised in the premises.

Introduction

Stenton Leigh Capital Corp. ("Stenton Leigh") was an entity which allegedly provided business valuation and appraisal services to the Funds.[1] Stenton Leigh

---

[1] Lancer Management Group, LLC ("Lancer") was the investment manager for Lancer Offshore, Inc. ('Offshore"), Omnifund, Ltd. ("Omnifund"), Viator Fund, Ltd, ("Viator") and Orbiter Fund, Ltd. ("Orbiter") hedge funds. Michael Lauer was principal owner of Lancer and controlled its operations and activities. Lancer initiated orders for the purchase and sale of securities on behalf of Offshore and Orbiter. Lancer Management Group II, LLC ("Lancer II") was the sole general partner for Lancer Partners, LP ("Partners"). Lauer was solely responsible for its operations

received 10 allegedly fraudulent transfers from the Receivership Entities of $16,800.00, $17,200.00, $18,375.00, $16,875.00, $12,000.00, $18,275.97, $83,707.50, $117,500.00, $44,875.00, and $44,875.00 on May 7, 2002, May 16, 2002, June 2, 2002, June 12, 2002, July 9, 2002, November 1, 2002, March 26, 2003, June 19, 2003, June 30, 2003, and June 30, 2003, respectively (the "Transfers").  Sixth Amended Complaint ("Complaint") ¶ 42 and Ex. B [DE 634].  Thus Stenton Leigh received a total of $390,483.47 in allegedly fraudulent transfer from the Receivership Entities.  The Complaint seeks recovery of these Transfers.

Standard of Review

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff.  *See Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007).  When a defendant challenges the plaintiff's standing through a motion to dismiss, the court must construe all disputed facts in the light most favorable to the plaintiff in an effort to discern whether relief could be granted under any set of facts that could be proven consistent with the allegations.  *See Chepstow Ltd. v. Hunt*, 381 F.3d 1077, 1080 (11th Cir. 2004).

---

and activities.  Lauer was the control person of Lancer and Lancer II (collectively "Lancer Management") and Offshore, Omnifund, Partners, LSPV, Inc. ("Offshore LSPV"), and LSPV, LLC ("Partners LSPV") (collectively "Funds").  Order and Opinion on Motion for Summary Judgment, *SEC v. Michael Lauer, et al.,* Case No. 03-80612-CIV-MARRA, DE 2133.

To satisfy the pleading requirements of Federal Rule of Civil Procedure 8, a complaint must contain a short and plain statement showing an entitlement to relief, and the statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (citing Fed. R. Civ. P. 8); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [ ] a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true" *Twombly*, 550 U.S. at 555 (citations omitted). Plaintiff must plead enough facts to state a plausible basis for the claim. *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, - U.S. --, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 570).

**Discussion**

In the Motion to Dismiss, Stenton Leigh argues that the Complaint should be dismissed because: (1) the Receiver's claims do not satisfy the pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure; (2) the Receiver's unjust enrichment claim is barred due to the existence of an adequate legal remedy and the doctrine of *in pari delicto*; and (3) the Receiver cannot assert FUFTA claims because the Receivership Entities and Partners do not qualify as "creditors" under FUFTA.

**Federal Rule of Civil Procedure Rule 9(b)**

Stenton Leigh argues that the Complaint should be dismissed because it does not comply with the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.  Specifically, Stenton Leigh argues that the Receiver's allegations regarding fraud have not been stated with the appropriate particularity and merely lumps Stenton Leigh in with the other defendants.  Stenton Leigh asserts that the Receiver has not sufficiently alleged details of Stenton Leigh's allegedly fraudulent acts, including when and where they occurred and who engaged in them.

Federal Rule of Civil Procedure Rule 9(b) ("Rule 9(b)") provides, in pertinent part, that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b).  This Rule "serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *Brooks v. Blue Cross and Blue Shield of*

*Florida, Inc.*, 116 F.3d 1364, 1370-71 (11th Cir. 1997) *quoting Durham v. Business Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988) (internal quotation marks omitted).  This Rule is satisfied if the complaint sets forth (1) the exact statements or omissions made; (2) the time and place of each such statement and who made the statement or omission; (3) the substance of the statement and how it misled the plaintiff and (4) the defendant's gain due to the alleged fraud.  *See id*. quoting *Brooks*, 116 F.3d at 1371.  That stated, the Court must not allow the application of Rule 9(b) to vitiate the overall concept of notice pleading.  *See Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).

This Court has previously held that Rule 9(b) should not be applied to cases such as this one where violations of the Florida Uniform Fraudulent Transfers Act, Fla. Stat. § 726.101, *et seq.* are asserted:

> The Court concludes that the heightened pleading standard of Rule 9(b) does not apply to claims brought under the FUFTA.  *Special Purpose Accounts Receivable Co-op. Corp. v. Prime One Capital Co., L.L.C.*  No. 00-cv-06410, 2007 WL 4482611, *4 (S.D. Fla. Dec. 19, 2007).  Unlike common law fraud claims, fraudulent transfer claims are asserted against a person or entity that did not deal directly with the plaintiff in the challenged transaction.  Therefore, the plaintiff generally possesses little or no information about the alleged fraudulent transfer other than it occurred.[2]  The fraudulent act, the clandestine act of hiding money, is

---

[2] As discussed by Wright and Miller, a common reason identified by courts to require heightened pleading for fraud claims rests on the idea that without this information, a defendant would be unable to formulate a responsive pleading.  C. Wright & A. Miller, 5A Federal Practice & Procedure § 1296 (2004).  In the fraudulent transfer context, however, the defendant, as opposed to the plaintiff, is more likely to possess the particularized information about the complained-of conduct.

>allegedly committed by a defendant and another, to the exclusion of the plaintiff.  This is in stark contrast to a common law fraud claim where a plaintiff alleges that a defendant made a material false statement or omission directly to the plaintiff.  Under such circumstances, the plaintiff is in a position to plead with the specificity required by Rule 9(b).  This Court concludes that despite the use of the word "fraud," a fraudulent transfer claim is significantly different from other fraud claims to which Rule 9(b) is directed.  *See Nesco Inc. v. Cisco,* No. Civ.A. CV205-142, 2005 WL 2493353, * 3 (S.D. Ga. Oct. 7, 2005) (finding common law fraud and fraudulent transfer "bear very little relation to each other" since the element of false representation need not be proven in fraudulent transfer cases).  Given this lack of access to information on the part of a plaintiff in a fraudulent transfer case, the application of a heightened pleading standard is inappropriate.

*Gulf Coast Produce, Inc. v. American Growers, Inc.*,  07-cv-80633, 2008 WL 660100, *5 (S.D. Fla. Mar. 7, 2008); Order and Opinion on Defendant Harold Zoref's Motion to Dismiss, *Marty Steinberg, et al., v. Barclay's Nominees (Branches) Limited, et al.,* Case No. 04-60897-CIV-MARRA, DE 171.  Therefore, Defendant's argument that the Complaint fails to satisfy Rule 9(b) pleading requirements is rejected.

**Unjust Enrichment**

Stenton Leigh asserts that because the Receiver has alleged a violation of Florida's fraudulent transfer statutes, which if proven is an adequate legal remedy, the Receiver's unjust enrichment claim must be dismissed.  The Court has also previously rejected this argument.  *See* Order and Opinion on Taubman's Motion to Dismiss, *Court-Appointed Receiver vs. Alfred A. Taubman as Trustee for the Taubman Ret. Rev. Trust, et al.*, Case No. 05-60199-CIV-MARRA, DE 96; Order and Opinion on Motions to Dismiss, *Court-Appointed Receiver vs. Michael Lauer, et al.*, Case No. 05-

60584-CIV-MARRA, DE 353. The Receiver may maintain an equitable unjust enrichment claim in the alternative to his legal claims against Stenton Leigh.

Stenton Leigh also argues that the Receiver's unjust enrichment claim is barred by the equitable doctrine of *in pari delicto*. The Receiver responds that the doctrine of *in pari delicto* does not apply to bar claims by an equity receiver because the wrongdoing of a receivership entity or its principals is not imputed to such a receiver.

This issue has been raised by other defendants in ancillary cases and the Court has ruled that *in pari delicto* is an affirmative defense that is not appropriately considered at this point. *See e.g.,* Order and Opinion on Motions to Dismiss, *Court-Appointed Receiver vs. Michael Lauer, et al.*, Case No. 05-60584-CIV-MARRA, DE 353.

**Receiver's Creditor Status**

Stenton Leigh's final argument asserts that the Receiver lacks standing to bring fraudulent transfer and unjust enrichment claims against it because neither the Receiver nor the Receivership Entities are creditors under FUFTA. Stenton Leigh further asserts that the Receiver's claims fail because he has not identified what claims exist, or when those claims arose. These arguments lack legal merit.

Previously, the Receiver's claims under FUFTA were dismissed because of the lack of specific factual allegations establishing the debtor creditor relationship. *See e.g.,* Order and Opinion on Motion to Dismiss Fifth Amended Complaint, DE 586. In another ancillary case, the Court concluded that the Receiver failed to sufficiently allege standing to bring claims under FUFTA because, among other things, he "neither

identified on which specific entity's behalf he is suing as a creditor, nor has he clearly articulated the basis upon which the transferor would be a debtor." *See* Order and Opinion on Motions for Reconsideration, *Court-Appointed Receiver et al. v. the Citco Group, LLC, et al.*, Case No. 05-60055-CIV-MARRA, DE 92 at 5, DE 93 at 6. After reconsideration, the Court stated that in order to bring claims under FUFTA, the Receiver must show that "he has a claim which qualifies him as a creditor of the entity or individual who has either transferred or received assets which thwarts the creditor's attachment." *Id.* The Court also noted that if the Receiver wishes to assert a claim as a creditor, he must plead factual allegations establishing the creditor/debtor relationship.

The Sixth Amended Complaint now contains many paragraphs addressing this concern. *See* Compl. ¶¶ 26-80. The Receiver alleges that he is the receiver of each of the Receivership Entities, as well as receiver of the post-receivership entities, and as such he is a creditor of the pre-receivership "zombie"[3] entities managed by Lauer.

---

[3] In *Scholes v. Lehmann*, 56 F.3d 750, 755 (7th Cir. 1995), the Seventh Circuit held that, during the operation of a ponzi scheme, the corporations created by the scheme operator were "robotic" "evil zombie" tools of the operator, but nonetheless separate legal entities in the eyes of the law that were forced (by the operator) to pay out funds to early investors instead of using the corporation's funds for legitimate investments. *Id.* at 754. Once the scheme collapsed, "[t]he appointment of the receiver removed the wrongdoer from the scene." Freed from his spell these former "zombie" entities became entitled to the return of the moneys-for the benefit not of the operator but of innocent investors-that the operator had made the corporations divert to unauthorized purposes. *Id.* Other courts have agree with the Seventh Circuit's "colorful analysis" and found a Receiver has standing to bring fraudulent transfer claims because, although the losing investors will ultimately benefit from the

*See, e.g.*, Compl. ¶¶ 31-32.  These so called pre-receivership "zombies" managed by Lauer made the transfers that are directly or indirectly traceable from investors in the Receivership Entities.  *See, e.g.*, Compl. ¶ 33.  The Receiver further alleges that he is a creditor of the entity transferees on the basis that the transferees received monies dissipated by the Receivership Entities.  *See, e.g.*, Compl. ¶ 34.

The Receiver makes the assertion in his response that each of the Receivership Entities holds claims against the Management Companies that fraudulently dissipated funds.  The Receiver maintains that he can stand as a creditor of the Management Companies with standing to pursue the fraudulent transfers because, as receiver of the newly "cleansed" Management Companies, he may assert claims against the "evil zombie" Management Companies which wrongfully dissipated funds to entities such as Stenton Leigh.

Accepting all factual allegations in the complaint as true and taking them in the light most favorable to the Receiver, as the Court must at this stage, the Court finds that the Receiver has made sufficient factual allegations regarding his standing

---

asset recovery, the Receiver is in fact suing to redress injuries that entities suffered when its managers caused the entities to commit waste and fraud.  *See, e.g., Donell v. Kowell*, 533 F.3d 762, 767 (9th Cir. 2008); *Knauer v. Jonathon Roberts Financial Group, Inc.*, 348 F.3d 230, 235 (7th Cir. 2003) ("As long as an entity is legally distinct from the person who diverted funds from the entity, a receiver for the entity has standing to recover the removed funds").  At the pleading stage, the Court will permit the Receiver to pursue this legal theory.  A determination of whether this theory is legally viable and whether the Receiver can prevail on this theory should await the development of a complete factual record.

as a creditor under FUFTA.  Whether he truly qualifies as a creditor is a question of fact which cannot be resolved now, but must be reserved for summary judgment or trial.

**Conclusion**

According to the conclusions made herein, it is hereby

ORDERED AND ADJUDGED that Defendant Stenton Leigh Capital Corp.'s Motion to Dismiss Plaintiff's Sixth Amended Complaint [DE 660] is DENIED.

DONE AND ORDERED in Chambers at West Palm Beach, Palm Beach County, Florida, this 29th day of March, 2010.

_____
KENNETH A. MARRA
United States District Judge

copies to:

All counsel of record
Magistrate Judge Linnea R. Johnson